UNITED STATES v. LEE WING. SAME v. LOUIE YOU. SAME v. LOUIE HANG. SAME v. LEE YIN. SAME v. LEE JO YEN. SAME v. CHIN HING. SAME v. CHAN KOW. SAME v. LEE WON JEONG.

(District Court, D. Oregon. March 7, 1905.)

Nos. 4,770, 4,771, 4,775–4,778, 4,781, 4,782.

CHINESE EXCLUSION—PERSONS UNLAWFULLY IN UNITED STATES—SUFFICIENCY OF EVIDENCE.

Chinese testimony to the effect that defendants, arrested for deportation, were born in the United States, or that they are merchants, is sufficiently corroborated by the testimony of credible white witnesses, in the one case, that they have seen and known defendants since they were

young as the children of Chinamen resident in this country, or, in the second case, that defendants were for years employed in stores as merchants, and reputed to be partners therein.

Appeals from Orders of Commissioner for Deportation of Defendants.

D. J. Malarkey and P. B. Sinnott, for appellants Lee Wing, Chan Kow, and Chin Hing.

James Gleason, for appellants Louie You and Louie Hang.

T. N. Strong, for appellant Lee Yin.

Edwin Mays, for appellants Lee Jo Yen and Lee Won Jeong.

W. W. Banks, for the United States.

BELLINGER, District Judge.   In the case of Lee Wing the Chinese testimony is to the effect that he was born in this country, in San Francisco, in 1874.   When the boy was five years old, his father, Lee Yep, took him to China, where he remained five years. Returning by way of San Francisco, the father came to Portland, bringing the boy with him.   The boy five years later, when he was fifteen years old, went to China, where he remained two years. He then returned to Portland, where he has since remained.   J. Frank Watson, president of the Merchants' National Bank, testifies that he has known the father of the defendant and the son, the defendant, since about 1890; that he has done business with the father, and knows that he is a merchant; that he has done a good deal of business with the firm of the father, and understood that the defendant was the merchant's son; has seen the son around the store, and was informed by the merchant that the defendant was his son.   T. W. Johnson, a plumber, testifies that he is very well acquainted with the defendant's father, and has known the defendant since about 1890; that he has done business for the firm, and understood at the time that the defendant was a son of Lee Yep; the boy was brought to the shop of witness several times by his uncle, Lee Moon.   The Chinese testimony as to the defendants Chin Hing and Chan Kow is to the effect that both were born in the United States.   A white witness—Mr. Hall, who is in the live stock business in the city—testifies that he has known Chin Hing 12 or 15 years (this defendant is about 18 years of age), and has known Chan Kow, with his father, since the former was a little boy; that he (the witness) has visited the Chinese gardens, and seen Chan Kow there, two or three times a year; that he has sold hogs to the man for whom Chin Hing works; that the two boys would come to witness' place two or three times a week to drive hogs.; that they would come and play around like children.   In the case of Lee Yin the Chinese testimony is to the effect that he is the son of Lee Foon Ming, of the drug firm of Wing Ching Lung, and that this firm began business 27 years ago; that the father, in going back to China, gave his interest in the business to defendant, who worked in the store, and kept the store; that defendant was born in China.   Holman, a white witness, testifies that he has lived in the city 41 years, and has been in

the dray business 30 years. He knows the firm of Wing Ching Lung, and occasionally delivered goods there. Has seen this boy (the defendant) at the store several years ago, and was told by Lee Foon Ming that the boy was his son. He cannot positively identify the boy. Charles N. Scott, another white witness, testifies that he has known the defendant eight or nine years, and knew him down at the store of Wing Ching Lung Company, but hasn't been much around the store for two years; that he never did any business with the defendant; did business with Lee Foon Ming, and was told by him that defendant was his son and was a member of the firm. Louie You is, according to his own testimony, 33 years of age. He was born in China, and was working in a laundry when arrested. The Chinese testimony in his case is to the effect that the defendant has been a member of a Chinese drug firm since 1890. Al Wohlers, a white witness, testifies, in effect, that he was on the police force from 1890 for six years and seven months, since which time he has been a hackman; that he knows the defendant by sight, and the defendant knows the witness every time he meets him on the street; that the defendant filled prescriptions in the store. George W. Mosher, another white witness, an expressman for 12 years in the Chinese district, testifies, in effect, that he knew the defendant 10 or 12 years ago; that the defendant was in the building occupied by the firm to which defendant claims to belong until it was burned down in 1897; that the witness had a stand on Second and Pine streets, and could see the defendant going in and out of the store; that he was doing the kind of work done in such a store; that it was a merchant business. In the case of Louie Hang the Chinese testimony is to the effect that he was born in the United States, and has never been out of the country. George Mitchell, a white witness, testifies that he has lived in Portland 36 years, and since he was 1 year old; that he was raised around Second street, near where his father had a grocery store, and has been a fruit peddler in Chinatown for 15 years; that he knows the defendant; first saw him when he was 5 or 6 years of age, and has seen him grow up here. He positively identifies the defendant. He says that he has seen the old man (defendant's father) leading defendant around when he was a little boy, and has sold fruit to the old man.

I am satisfied of the substantial truth of the testimony respecting the several defendants named as I have summarized it. The testimony of the white witnesses tending to prove the place of birth of the defendants who claim to have been born here is as direct as the circumstances in such cases will permit. The presence of these defendants in the country since they were children, and the prior residence and statements made at the time of those in whose care they were, is as far as white testimony, as a rule, can go. While there is no legal presumption, at least of a conclusive character, from these circumstances, that such defendants were born in this country, yet these circumstances are in strong corroboration of the testimony of the defendants and of Chinese witnesses as to the place of defendants' birth. And so of the merchant character

of the defendants Lee Yin and Louie You. The testimony of white witnesses tends to prove that they belong to the merchant class, and it conclusively proves a long residence in this city. While, as just stated, such residence is not a conclusive fact in these cases, it is a circumstance in corroboration of the positive testimony offered in their behalf. The tendency of this testimony in the case of Louie You is to overcome any inference against him arising from the fact that he was working in a laundry at the time of his arrest. That circumstance is more consistent with the status of a laborer that is recent than it is with one that has continued during any considerable part of the time covered by this investigation. It is more probable that these defendants would have suffered arrest at the hands of the officers charged with the execution of the exclusion laws if they were laborers during all these years than that they would have had the immunity enjoyed by them. In these cases the orders of deportation made by the commissioner are set aside and the defendants discharged.

In the case of United States v. Lee Jo Yen and Lee Won Jeong the orders of deportation are affirmed. Whatever consideration I might otherwise be disposed to give to the testimony in behalf of these defendants, the unexplained fact admitted by them that they came from Seattle to Portland via Pasco, and upon their arrival at The Dalles got off the cars and came to Portland by boat, convinces me that they are unlawfully in the country, and that the consciousness of such fact prompted them to adopt this devious route and course to escape detection and arrest on their arrival in Portland.